UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| CONCEPCION and MARIA NICOLASA CAMPOS, husband and wife; CONCEPCION CAMPOS, as personal representative of the ESTATE OF B.C., a deceased minor child,<br><br>　　　　　Plaintiffs,<br><br>　　　v.<br><br>PROSSER SCHOOL DISTRICT NO. 116; and JOHN DOES NOS. 1 through 50,<br><br>　　　　　Defendants. | No. CV-07-5006-FVS<br><br>ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |

**THIS MATTER** came before the Court on October 7, 2008, for a hearing on Defendants' motion for summary judgment.  (Ct. Rec. 32).  Also before the Court is Plaintiffs' January 17, 2008 motion to strike Defendants' statement of undisputed facts in paragraphs 33, 34, 36 and 40.  (Ct. Rec. 53).  Plaintiffs are represented by J.J. Sandlin.  Defendants are represented by Jerry J. Moberg, Jennifer D. Homer, and Michael E. McFarland, Jr.

**BACKGROUND**

　　This lawsuit arises out of a single vehicle accident where Belen Campos, a Prosser School District high school student, was a passenger in a 15-passenger van used to transport Upward Bound Program students to visit a local college.  Compl. ¶ 1.

　　On December 15, 2003, Ms. Campos was traveling with eight other passengers in a Ford E350 15-passenger van, headed northbound on Highway 395.  Compl. ¶ 15.  The trip commenced in Prosser, Washington.

ORDER . . . - 1

Compl. ¶ 15. The high school students were traveling to Cheney, Washington, as part of the Upward Bound Program for high school students. Compl. ¶ 15. The van hit black ice, the driver of the van lost control and the van rolled. Compl. ¶ 15. During the rollover, Ms. Campos, as well as another Prosser High School student, sustained fatal injuries. Compl. ¶ 15.

**DISCUSSION**

**I. Plaintiffs' Collateral Estoppel Argument**

Plaintiffs assert that because the superior court trial judge in the *Bardessono* case refused to grant summary judgment, this court is bound by that judge's ruling under the doctrine of collateral estoppel. (Ct. Rec. 45 at 13-15).

Fifteen-year-old Corinne Bardessono was killed in the same rollover accident which caused Ms. Campos' death. The parents of Ms. Bardessono filed a wrongful death action in Spokane County Superior Court naming the Prosser School District ("the District") as a defendant, among others.

In the *Bardessono* case, the District moved for summary judgment, unsuccessfully, and sought discretionary review by Division III of the Washington Court of Appeals in Spokane, Washington. The Court of Appeals denied the District's request for discretionary review. The trial against the District involving Ms. Bardessono's death resulted in a hung jury. The parties in the *Bardessono* case thereafter stipulated to a dismissal of the action.

Collateral estoppel, also referred to as "issue preclusion," bars the relitigation of a factual issue that has been previously decided

ORDER . . . - 2

in a proceeding between the same parties. *Christensen v. Grant County Hosp. Dist. No. 1*, 152 Wash.2d 299, 306, 96 P.3d at 957 (2004). Collateral estoppel may be applied to preclude only those issues that have actually been litigated and necessarily and finally determined in an earlier proceeding. *Shoemaker v. City of Bremerton,* 109 Wash.2d 504, 507, 745 P.2d 858 (1987).

Under Washington law, collateral estoppel applies when the following four elements are present: (1) the issue decided in the earlier proceeding was identical to the issue presented in the later proceeding, (2) the earlier proceeding ended in a judgment on the merits, (3) the party against whom collateral estoppel is asserted was a party to, or in privity with a party to, the earlier proceeding, and (4) application of collateral estoppel does not work an injustice on the party against whom it is applied. *Reninger v. Dep't of Corr.,* 134 Wash.2d 437, 449, 951 P.2d 782 (1998); *State v. Williams,* 132 Wash.2d 248, 254, 937 P.2d 1052 (1997).

The doctrine of collateral estoppel applies only when an issue actually has been litigated and decided in a prior action by a valid and final judgment. However, the Washington courts have held that denial of a motion for summary judgment is not appealable. *Roth v. Bell*, 24 Wash.App. 92, 600 P.2d 602 (1979). The Washington courts have also stated that an order which is not appealable is not a final judgment. *McLean v. Smith,* 4 Wash.App. 394, 400, 482 P.2d 798 (1971) ("The rules of res judicata are not applicable where the order or judgment is not a final order or final judgment."). The denial of a summary judgment motion is interlocutory only, and is not a judgment

ORDER . . . - 3

on the merits. *See*, *Fluke Capital & Management Services Co. v. Richmond*, 106 Wash.2d 614, 618, 724 P.2d 356 (1986) (denial of motions for summary judgment are not characterized as decisions on the merits); *see, also, Zimny v. Lovric*, 59 Wash.App. 737, 739, 801 P.2d 259 (1990) (denial of a summary judgment motion has no res judicata effect because it is not appealable, and therefore, it is not a final judgment).

The denial of the District's summary judgment motion in the *Bardessono* case was not appealable, and therefore, it was not a final judgment. Accordingly, contrary to Plaintiffs' assertions, the denial of the District's summary judgment motion in the *Bardessono* case does not have a collateral estoppel effect in this case.

**II.  Defendants' Motion for Summary Judgment**

    **A.  Summary Judgment Standard**

A moving party is entitled to summary judgment when there are no genuine issues of material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265, 273-74 (1986). A material fact is one "that might affect the outcome of the suit under the governing law[.]" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A fact may be considered disputed if the evidence is such that the fact-finder could find that the fact either existed or did not exist. *See id.* at 249, 106 S.Ct. at 2511 ("all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury . . . to resolve the parties' differing

versions of the truth" (quoting *First National Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 288-89, 88 S.Ct. 1575, 1592, 20 L.Ed.2d 569 (1968))).

The party moving for summary judgment bears the initial burden of identifying those portions of the record that demonstrate the absence of any issue of material fact. *T.W. Elec. Service, Inc. v. Pac. Elec. Contractors Assoc.*, 809 F.2d 626, 630 (9th Cir. 1987). Only when this initial burden has been met does the burden of production shift to the nonmoving party. *Gill v. LDI*, 19 F. Supp. 2d 1188, 1192 (W.D. Wash. 1998). Inferences drawn from facts are to be viewed in the light most favorable to the non-moving party, but that party must do more than show that there is some "metaphysical doubt" as to the material facts. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586-87, 106 S.Ct. 1348, 1356, 89 L. Ed. 2d 538, 552 (1986).

Here, the facts upon which the Court relies are either undisputed or established by evidence that permits but one conclusion concerning the fact's existence.

**B. Discussion**

Defendants move for summary judgment on Plaintiffs' negligence claims.[1] Specifically, the District contends that it is not liable, as a matter of law, for the alleged failure to supervise Ms. Campos by releasing her to travel in a 15-passenger van or for the failure to

///

---

[1] Plaintiffs have also pleaded civil rights causes of action against Defendants pursuant to 42 U.S.C. § 1983. *See* Complaint ¶¶ 80-86. Defendants have not moved for summary judgment with respect to these claims.

ORDER . . . - 5

warn Ms. Campos or her parents of the dangers of riding in a 15-passenger van.

### 1. Failure to Supervise

Plaintiffs' complaint alleges that the District is negligent for failing to supervise its students and in releasing them to travel in the 15-passenger van on December 15, 2003. Complaint ¶ 77. Defendants contend that the District is not legally obligated to supervise students, like Ms. Campos on December 15, 2003, that are not in its custody or control. (Ct. Rec. 33 at 17-28).

Ms. Campos was a participant in the Upward Bound Program. The Upward Bound Program is a federally funded program, organized and administered by Columbia Basin College ("CBC"), which targets high school students who generally would be the first students in their family to attend college or students from economically disadvantaged families. CBC employees visit various high schools and recruit students into the program.

At the time of her death, Ms. Campos was on a field trip sponsored by CBC through its Upward Bound Program. The District approved Ms. Campos' absence from school so that she could attend the field trip. The Upward Bound Program employees transported Ms. Campos, and others, in a 15-passenger van that day.

Plaintiffs allege and present evidence that use of a 15-passenger van was dangerous and improper for purposes of transporting high school students. (Ct. Rec. 45 at 4-11). Plaintiffs allege the District failed to ensure that its students who were participating in the Upward Bound Program were protected against traveling in an unsafe

ORDER . . . - 6

15-passenger van. Defendants, however, assert that use of 15-passenger vans for the transportation of students is perfectly legal. Defendants argue that there are no federal or Washington State restrictions that would prevent the use of these vans to transport high school students.

Although it does not appear that use of the 15-passenger van was in violation of the state or federal law, Plaintiffs have produced sufficient evidence supporting their theory that the vans utilized for the field trip had known safety problems. Reasonable minds could disagree as to whether it was proper for the vans to be used to transport the students given the safety issues raised by Plaintiffs. Therefore, the Court finds that it would be inappropriate to conclude, as a matter of law, that there were no risks associated with traveling in these vans.

Nevertheless, Defendants contend that even if the 15-passenger vans presented known dangers, the District was not legally obligated to supervise Ms. Campos because she was not in the District's custody or control on December 15, 2003. (Ct. Rec. 33 at 17). The undersigned agrees.

School districts are charged with the responsibility of supervising children under their control during the time that they are at school under the doctrine of "in loco parentis." This duty to supervise and protect students is based on the assumption that the district has direct control of the student and the parent does not during the time the student is at school. *McLeod v. Grant County School District No. 128*, 42 Wn.2d 316, 320, 255 P.2d 360 (1953)

(protective custody of teachers is substituted for that of the parent). A duty of reasonable care is imposed by law on the school district to take certain precautions to protect the pupils in its custody from dangers reasonably to be anticipated. *McLeod*, 42 Wn.2d at 320.

Responsibility of a school district to supervise students is not limited to school hours, school property, or school curricular activities. *Sherwood v. Moxee School District No. 90*, 58 Wn.2d 351 (1961). The duty to supervise also extends to school sponsored extra-curricular activities under the control of the school and within its scope of authority. *Carabba v. Anacortes School District No. 103*, 72 Wn.2d 939 (1967). To qualify as school sponsored, the activity must be within the scope of the school's authority and the school must exercise control over the activities. *Rhea v. Grandview School District No. JT 116-200*, 39 Wn.App. 557, 694 P.2d 666 (1985) (tort liability of school district arises from the exercise or assumption of control and supervision over the organization and its activities by appropriate agents of the school district); *Scott v. Blanchet High School*, 50 Wn.App. 37, 44-45, 747 P.2d 1124 (1987) (the initial question in a negligent supervision claim is whether the tort was committed within the school's scope of authority).

The basic premise for district fault in a custodial supervision situation is that a school district has the power to control the conduct of its students while they are in school or engaged in school activities, and with that power goes the responsibility of reasonable supervision. *Peck v. Siau*, 65 Wn.App. 285, 292, 827 P.2d 1108 (1992).

ORDER . . . - 8

As noted by Defendants, "[i]t stands to reason that when the student is not in the district's custody and control then the district does not stand in the shoes of the parent and does not have the power to control the conduct of the student." (Ct. Rec. 33 at 21-22).

Here, although the District approved Ms. Campos' absence from school so that she could attend the field trip, there has been no showing that the District had control over the Upward Bound Program or the transportation related to the programs activities. Ms. Campos was on a field trip sponsored by CBC through its Upward Bound Program. The Upward Bound Program employees transported Ms. Campos, and others, in the 15-passenger van that day. The District did not exercise or assume control or supervision over the Upward Bound Program in general or the CBC planned and organized field trip. As asserted by Defendants, CBC is solely responsible for administering the Upward Bound Program, the District did not have any authority to make decisions regarding the program, and CBC exercised and assumed control and supervision over and arranged the transportation for the Upward Bound Program field trip.

While Plaintiffs present evidence disputing these facts, the Court is unconvinced that the alleged tort was committed within the District's scope of authority. Plaintiffs indicate that the District may submit suggestions about how to better operate the Upward Bound program, the District's counselors provide the Upward Bound Program officials with names of eligible students, the District can recommend which students be admitted or removed from the Upward Bound Program, the District can suggest ideas for field trips, the Upward Bound

ORDER . . . - 9

Program may use the District's facilities "free of charge," and the District's students are released with excused absences to participate in Upward Bound Program activities. (Ct. Rec. 45 at 16-17). Moreover, Principal Lusk referred to the District and the Upward Bound Program as a "partnership," and it is undisputed the Upward Bound Program employed District staff to tutor students enrolled in the Program. Nevertheless, these facts do not demonstrate that the District exercised or assumed control and supervision over the Upward Bound Program and its activities.

The relationship and interaction of the District and the Upward Bound Program is disputed. However, even viewing the facts in a light most favorable to the nonmoving party, Plaintiffs, the District's involvement with the Upward Bound Program does not raise a genuine issue of material fact with respect to the custody or control over Ms. Campos on December 15, 2003. The Court finds, as a matter of law, that the District did not exercise or assume control and supervision over the Upward Bound Program and its activities. *See, Rhea*, 39 Wn.App. at 557. Consequently, the Court also finds, as a matter of law, that the District had no authority to direct how the students would be transported on the Upward Bound Program field trips. Since it is determined that the District had no custody or control over Ms. Campos on December 15, 2003, the Court finds it appropriate to grant judgment in favor of the Defendants on Plaintiffs' negligent supervision claim.

///

///

ORDER . . . - 10

### 2. Failure to Warn

Plaintiffs claim that the District is negligent for failing to warn its students and their parents of the dangers of traveling in a 15-passenger van on December 15, 2003. Complaint ¶ 78. Defendants contend that the District did not have a legal duty to warn Ms. Campos or others, and, even if such a duty existed, it would be a duty to all students in general and thus, under the public duty doctrine, the District could not be held liable for any breach of that duty. (Ct. Rec. 33 at 9-17).

#### a. Public Duty Doctrine

Defendants assert that the public duty doctrine applies in this case and provides the District with a complete defense to the negligence claim.

The public duty doctrine requires that a plaintiff seeking recovery from a public entity or government employee demonstrate a breach of duty owed to the individual plaintiff, not "the breach of a general obligation owed to the public in general, i.e., a duty owed to all is a duty owed to none." *Beal v. City of Seattle*, 134 Wn.2d 769, 784, 954 P.2d 237 (1998).

Defendants argue that a duty to warn of the alleged dangers of 15-passenger vans, if a duty at all, was a duty owed to the general student body population. The Court does not agree. The facts as asserted by Plaintiffs show that only students participating in the Upward Bound Program and attending Upward Bound Program field trips faced the alleged risks associated with traveling in 15-passenger vans, not the entire student body population. Accordingly, the

ORDER . . . - 11

alleged duty to warn was not owed to all.  The public duty doctrine does not apply in this case.

### b. Duty to Warn

As determined above, although it does not appear that use of the 15-passenger van was in violation of the state or federal law, Plaintiffs have produced sufficient evidence supporting their theory that the vans utilized for the field trip had known safety problems. The Court thus finds it inappropriate to conclude, as a matter of law, that there were no risks associated with traveling in these vans. Defendants nonetheless contend that even if the 15-passenger vans presented known dangers, the District was not legally obligated to warn Ms. Campos of the alleged risks.

There is no federal or Washington State statute or regulation which creates a duty on the District to warn its students regarding travel in 15-passenger vans.  Moreover, there is no Washington State case law indicating that a school district has a duty to warn students "outside of the school's custody" that they should not ride in 15-passenger vans.  (Ct. Rec. 33 at 10).

As indicated by Defendants, "[t]he threshold determination in a negligence action is whether the defendant owes a duty of care to the plaintiff." *Tincani v. Inland Empire Zoological Soc'y*, 124 Wash.2d 121, 128, 875 P.2d 621 (1994); (Ct. Rec. 33 at 10-11).  If the District exercised authority over the Upward Bound Program, Ms. Campos would be deemed to be in the custody of the District while participating in the Program, and the District would have a duty to protect and keep her safe. *McLeod*, 42 Wn.2d at 320.  Whether the

ORDER . . . - 12

District breached such a duty by failing to warn Ms. Campos or her parents of alleged risks associated with traveling in 15-passenger vans on Upward Bound Program field trips would be a question for the trier of fact to decide.

However, Ms. Campos was not in the custody of the District when she participated in the Upward Bound Program field trip on December 15, 2003. *Supra*. As such, the District did not have a legal duty to protect or keep her safe while she participated in the field trip. Because no legal duty existed, the District is not liable, as a matter of law, for failing to warn of alleged risks associated with 15-passenger vans. Consequently, the Court concludes that Defendants are also entitled to summary judgment on Plaintiffs' failure to warn claim.

### III. Plaintiffs' Motion to Strike

On January 17, 2008, Plaintiffs moved to strike Defendants' statement of undisputed facts in paragraphs 33, 34, 36 and 40. (Ct. Rec. 53). The disputed information pertains to the safety and legality related to the use of 15-passenger vans. (Ct. Rec. 39 ¶¶ 33, 34, 36, and 40). As determined above, the Court makes no dispositive findings regarding the alleged risks associated with traveling in these vans. *Supra*. Accordingly, in addressing Defendants' motion for summary judgment, the Court does not specifically rely on the facts disclosed in Defendants' statement of undisputed facts in paragraphs 33, 34, 36 and 40. Plaintiffs' motion to strike portions of Defendants' statement of undisputed facts is denied as moot.

///

ORDER . . . - 13

**CONCLUSION**

The Court being fully advised, **IT IS HEREBY ORDERED**:

1. Defendants' Motion for Summary Judgment (**Ct. Rec. 32**) is **GRANTED.**

2. Plaintiffs' state law negligence claims against Defendants are **DISMISSED with prejudice**.

3. Plaintiffs may continue to pursue their federal claims under 42 U.S.C. § 1983. *See* Complaint ¶¶ 80-86.

4. Plaintiffs' motion to strike portions of Defendants' statement of undisputed facts (**Ct. Rec. 53**) is **DENIED**.

5. This matter shall be set for a telephonic scheduling conference to determine dates for addressing Plaintiffs' remaining federal claims.

**IT IS SO ORDERED.** The District Court Executive is hereby directed to enter this order and furnish copies to counsel.

**DATED** this ___10th___ day of October, 2008.

> s/Fred Van Sickle
> Fred Van Sickle
> Senior United States District Judge

ORDER . . . - 14